did the clerk call the next case please so 1-05-7 is Robert Finch выпенд vicious and assisted by Joseph Nemechis Mr. Nemechis Good Morning May it please the court, Mr. Kortelsky, Madam Clerk, Mr. Phelous. Good morning again your honors. Your honors, I'm not exactly what you would call a regular in this courthouse. However, I have had the pleasure of presenting three cases before this court in the past, and during those times I've also observed attorneys present their cases, and one thing struck me during those experiences, and that is, is that regardless of the case that is before the court, the court has an absolute command of not only the law but especially the facts of each case that is being presented. So with that in mind, I would like to focus just on two points. The first, well, one is the plaintiff's contention that the defendant's decedent Rex Adams had actual notice of the hazardous condition or the water at the bottom of the basement stairs prior to the occurrence in question, thereby imposing upon him a duty to either warn or ameliorate the situation as he saw fit. The other point would be the defendant's contention that Patricia Flynn's affidavit testimony regarding her father, Rex Adams, personal hygiene habits regarding baths being precluded or barred by the Dead Man's Act, and I would like to address that first because that somewhat kind of dovetails into the notice issue. Now, but Patricia Flynn, who's married to the plaintiff, Robert Flynn, grew up in the home of Rex Adams. She lived there until she moved away to David in support of the plaintiff's motion or briefed in opposition to the defendant's motion for summary judgment, and part of the affidavit indicated that during the time that she was living at her home, it was her observation that her father never took a bath, never. He always took a shower, unfailingly, every day. The only shower in the home, as is undisputed and agreed to, I believe, by the parties is in the basement. Now, the reason the defendant is claiming that this testimony, this affidavit or person directly interested in the action shall be allowed to testify on his or her behalf to any event which took place in the presence of the deceased person, and its defendant's contention, as I indicated in my reply brief, that the question of Mr. Adams' showers are decidedly an event which took place in the presence of the deceased. This is where we are company with respect to agreement regarding the provisions of the Dead Man Act. In the case that was cited by the defendants themselves, Rerek versus Lally, the court found that the event was the accident itself. The case dealt with testimony being barred with respect to the condition of a motor vehicle, the weather conditions on the day of the accident, and the court simply stated that that wasn't the event that was in question. What was the event in question was the accident itself, and that's the exact same issue here. It's not Whether or not Mr. Adams took a shower or a bath is not the event in question. The event in question is Mr. Flynn falling at the bottom of the stairs because he slipped in the puddle of water which was at the bottom of the stairs. Now, that having been said, then that goes to the notice issue. Defendants basically stated that there was no duty that could be proved by the plaintiffs as to Mr. Adams, and therefore, we couldn't prove our case, and therefore, summary judgment was proper. And to support that, they're saying that there is no testimony whatsoever that Mr. Adams had any notice of the water at the bottom of the stairs. Our position is simple. Mr. Adams took a shower every single day. The only shower in that residence was in the basement. In order to get to that shower, Mr. Adams had to walk down the basement stairs, and a reasonable person could infer from that scenario that he would have or at the bottom of the stairs, and thereby warn the invitees or his family who was there to visit him on his 88th birthday of that condition. And our position is that since Mr. Adams had notice, he had the duty, and if he had the duty, then he had to warn. And quite frankly, when the trial court ruled in favor of the defendants on their motion for summary judgment, we really don't know what the reason was. There were no findings of fact that were made as part of the decision. So I can only guess, as I indicated in my brief, that it had something to do with the notice issue. The notice is decidedly, to use a phrase used by the defendant, a genuine issue of material fact that should have been submitted to a jury. And we hadn't had that opportunity. So our basic point is that Mr. Adams had notice. He had a duty, and he should have warned. And that in and of itself, whether he knew or didn't know, that's enough of an issue that should have been presented to a jury. And precluded, I beg your pardon, and precluded the entry of summary judgment on behalf of the trial court's decision be reversed, and that this matter be remanded back to the Circuit Court of Little County for further proceedings. Thank you. Thank you. Ms. Gorkowski, good morning. Good morning, Your Honor. May it please the Court, counsel? In a slip-and-fall case, the plaintiff is kept to hold an owner responsible for the condition on the premises. The plaintiff can recover under a couple different theories. But in this case, Judge Powers directly found that the plaintiff didn't produce evidence for any of these theories, and that there was no genuine issue of fact. And so Judge Powers is correct. So you can recover if you have evidence that the owner or an employee placed the substance on the floor. We don't have any evidence of that, and there's not an allegation that Mr. Adams somehow caused water to go on the floor, such as by the spill. You can have actual knowledge, and that In this case, the plaintiff, Mr. Flynn, arrived at his father-in-law's house on a date. I think it's – I can't remember the date now. And he and his family arrived, and they got there on a Saturday, and they spent the night. Mr. Flynn testified that the next morning on Sunday, he woke up early at 6. He took a shower – he went downstairs to take a shower about 10.30. He testified that he went down the stairs that led to the basement, and at the landing on the stairs, there was tile, and at that floor – and he fell. And then after he fell, he noticed that his shirt and pants were wet, and that there was water on that floor on the landing. He relies also on testimony that there was, in the past, some seepage in the basement. And he uses that to try to argue that in that way, Mr. Adams had constructive or actual knowledge of the water on the floor. But again, we know that he didn't have actual knowledge. Nobody told him about the water. There's no testimony that Mr. Adams saw the water, so there's no evidence that Mr. Adams had actual knowledge of water there. So they are trying to show constructive knowledge, and by arguing that there was – the basement had seepage problems. Sometimes when it rained, there might be seepage in the rec room, which was a separate room that was carpeted. And so the testimony is occasionally there would be moisture in there. But there's no testimony that there was ever, from the seepage, water at the bottom of the stairs. There's no testimony that that's ever happened in the past, that there was water there on the bottom of the stairs. And the case law makes it clear that for constructive knowledge, there are certain requirements that have to be met. So in the absence of actual knowledge or constructive knowledge of the condition, the water on the floor, if there was liability, that would make the owner the insurer of the plan of safety. And Tom Jack, a case we cite, relies on Hayes, which is a 1983 case. Hayes says that there's a time element necessary to establish constructive knowledge. So there has to be a certain amount of time that the evidence shows that the water was on the floor before there can be constructive knowledge. In some cases, that's proved by eyewalks. I mean, a witness might testify, I walked by, I saw the water there at 10 o'clock, and then the fall was at 10.30, so that might provide a finding of constructive knowledge. But Hayes, the third district case, says that it's incumbent on the plaintiff to establish that the water was on the floor long enough to give constructive knowledge. And Tom Jack said, if the water is there for too short a period of time, or where a plaintiff has no evidence of how long the water was there, that's insufficient to give knowledge to the defendant. Hayes said, the plaintiff testified that they fell in a restroom at 12.15, and the court said that, this court said that, Justice Stauber said that, you know, he fell at 12.15, it could be that the water got there at 12.10 or 12.05, and without any evidence of how long the water was there, that there's insufficient evidence of constructive knowledge. So, the plaintiff doesn't have any evidence, as required by Hayes and Tom Jack, about how long the water was at the bottom of the stairs. Nobody else in the family had been downstairs that day, there's no evidence that anybody else saw water on the floor that day, or even the day before. Again, the plaintiff is trying to say, somehow there's constructive knowledge because there's seepage in a different room in the house, and so somehow that gave Mr. Adams constructive knowledge that there was water at the bottom of the stairs in a different place on that Sunday morning. The other thing is, that theory has no evidence to support it either, because we don't know where that water came from that was on the bottom of the stairs. There would be a reasonable inference that it didn't come from seepage, because the seepage hadn't caused water to be there that morning, and water could be on the floor, as we all know, for lots of reasons. You know, a sink could overflow, somebody could have trapped water after taking a shower, somebody could have spilled something, and so there's lots of things that could happen that would put water there that is unrelated to the seepage. So without any evidence that the seepage had anything to do with the water that was allegedly at the bottom of the stairs in a different place than it had ever been before, there's no constructive knowledge that there was water at the bottom of the stairs on that morning. Plaintiff relies on the affidavit of his wife, Patricia Flynn, who said, my father took a shower every day, and he took a shower, and the only shower was in the basement, there wasn't a shower anywhere else in the house. So the plaintiff tries to use that to speculate that, well, if Mr. Adams went down in the basement every day to take a shower, he must have seen the water, or he should have seen the water. And we don't know, you know, Mr. Adams got up, I mean, Mr. Flynn got up at 6 o'clock, and he took a shower at 10.30, he didn't testify that he saw Mr. Adams go down the basement that day, nobody testified he went down there, and if he took a shower every day, he might take a shower every night before he goes to bed. So that does not lead to any kind of inference, the fact that he took a shower every day doesn't lead to any kind of inference that he saw the water, or should have seen the water, that Mr. Flynn fell on at 10.30 in the morning. And so, again, none of this gives rise, the plaintiff also relies on a real estate disclosure form that says that there's ceasage when there's rain, and again, that doesn't give us constructive knowledge of the water on the floor, because we don't know where that water came from, or how long it was there. And so plaintiff has to be able to put in some proof that the water was on the floor, and the owner of the house should have known about it. That's not the law in Illinois, that the owner of the house has responsibility to be aware that there's water on the floor at a given time. Plaintiff argues that the court should apply racist or low-bidder to the case, and racist, that doesn't apply because, first of all, you have to have proof that the condition was in the exclusive control of the defendant, and you have to have proof that the event or injury isn't the type of event or injury that occurs in the absence of negligence. Again, we know that people can fall in the absence of negligence. You know, your knee could give out, or something like that could cause someone to fall, even if there's no negligence by anybody, including the plaintiff. We know that there could be water on the floor in the absence of negligence. For example, as I said, a sink could overflow by somebody else but not the defendant, or there could be a leak in the pipes or something like that. And so water on the floor isn't necessarily the result of negligence. It can result from a backup of the sewer or something like that. And also, this instrumentality was not in the sole control of Mr. Adams. He was 89 years old. His other daughter, Kathy, would come to the house and help him, and she had been down in the basement the day before. Mr. Flynn's teenage daughters testified that they had been down in the basement and had played ping-pong. And again, everybody testified that they went down and took showers down there. And so he wasn't the only person who had control. And it just could be that someone else, you know, water attracted, or something like that. And the cases in Illinois haven't applied. RACIPS is a little bit harder to slip and fall because, you know, if you said, well, falls only happen, don't happen without negligence, and other people have, and if the exclusive control of the home is in the hands of the defendant, that would probably apply in most cases. And so RACIPS can't apply to slip and fall. It has not been found to apply. So in the absence of any information about where the water came from, how it got there, and in the absence of any information how long it was on the floor, plaintiff can't establish constructive knowledge or actual knowledge. And Judge Powers is right in granting somebody judgment. Any other questions? Thank you. Mr. Nemethis, any rebuttal? Your Honor, as far as the constructive notice issue and how long, well, first of all, it's uncontested and it's unrebutted, well, maybe contested, but it's unrebutted that Mr. Flynn slipped in water at the bottom of the stairs in the basement. There's nothing to prove otherwise or show otherwise. So now counsel references, well, we don't know how long it was there or how long it got there, and that's one of the points that goes to constructive notice. Well, Illinois law doesn't have any specific rule as to how long a condition has to exist before the owner of the premises is charged with constructive notice of that condition. Well, tell me, did anybody, your clients, wife, siblings, did anybody testify they'd ever seen water in that location in the basement before, other than the foot of the steps? Your Honor, the deposition testimony was that there had been water in the basement and not just in the recreation area as counsel indicated. Judge, if I could back up. This is a house in Morton, Illinois, and it was built, I think, in the early 50s. It had a cinder block, it was built with a cinder block foundation. If it was a poor concrete foundation, I wouldn't be standing here today before you. But it was cinder block, and any single time, I mean, if somebody pours out a can of hop on the lawn, you've got seepage in the basement, which is why they had Mr. Adams had 3D humidifiers in the basement to humiliate the water down there. As to that one exact specific spot, Mrs. Flynn said she didn't remember ever seeing water right at the bottom of the stairs, maybe about 10, 8, 10, 15 feet away. The girls, they were both, well, they weren't even teenagers then. They both testified they saw water in the basement on previous occasions. Kelsey, the oldest daughter, did say that the rug was damp when she went down that specific weekend, and she also testified that there had been water in the rest of the basement on previous occasions when they would visit, but she did not recall anything about that specific spot right at the bottom of the stairs. But again, Your Honor, there's no, there's no, nothing to rebut, or it hasn't been rebutted, or Mr. Flynn's testimony, I should say, hasn't been rebutted, that he fell in water at the bottom of the stairs, and you've got stairs that are carpeted. Where'd the water come from, how'd it get there? Your Honor, that's a question I don't think anybody's going to be able to answer. But how's a jury going to answer it? Well, Your Honor, that's one of the reasons, well, for 25 years of my career, I did nothing but defense work, and since I've been with Chuck Bronson and Associates, I've been doing finance work, which kind of makes me, rather than reinvent the wheel, I kind of do some research, which is why I threw in the residents account, which just goes to their argument. The fact of the matter is, you don't find water normally, and granted, we are talking about a case that has seepage, but unlike the case cited by the defendants, Bailey, I believe it was, where there was water in the restroom, here you're talking about a residential home under the control of an owner, where normally, under normal circumstances, you wouldn't find water. And that's why I put a two-count complaint with the residents, because it reminded me of a case that I had in law school, well, a few years back, where a barrel came out of a second story window, and hit the plant. And that made me think of Ray Zipso with respect to this particular case. There's water at the stairs. Now, yeah, everybody knows about the water seepage problem. Everybody knew about it. There was no question about it. But that specific spot, nobody could really say anything about it, and I said, aha, it's within the control of the defendant's decision, because he owns the home. He maintains that home. And normally, you don't find water at the bottom of the stairs of a basement. I mean, a bathroom in a restaurant, sure, anything can happen. But there's, just because nobody was, the exclusive control issue, I think, where the fact that Kathy Mellon said she was downstairs and never saw any water, well, I'll leave my explanation of her testimony to the Briggs. But the fact of the matter is, I mean, I don't think her testimony should be counted, but the bottom line is, there's nothing to indicate that anybody did anything to alter the condition of the premises down in the basement, but yet the water was there at the bottom of the stairs. Well, was there any investigation by your client after, while they were still there, where did this water come from? No. Because what happened was, is after, when he fell, that was Sunday, April 1st. Since he wasn't feeling too well, everybody else went to Mass. They came, when they came home, he didn't go, he didn't join the, you know, Earth Day celebration, and they just decided to go home. I think the thought of investigating why he fell, or whatever, never occurred to Mrs. Flynn, or to Mr. Flynn, for that matter. And, you know what, that's kind of the problem with this particular case, because it happened quite a while ago, and memories stay. And, unfortunately, ours is the only profession that is somewhat anal. And, I mean, I consider myself in that regard, too. But the fact is, attorneys want to know exactly how many seconds elapsed before the light changed and you felt impact on a traumatic accident, where the person's kind of concentrating on, oh my God, and not thinking, counting one Mississippi, two Mississippi. Well, the same thing is true in this particular case. I don't think that the thought even occurred to them, because, quite frankly, the injuries to Mr. Flynn were kind of serious and ultimately required surgery. So they weren't really thinking about Mr. Adams or the home. They were thinking more about getting his back fixed. So by the time everything got around to, well, wait a minute, you know, I mean, we got these bills and et cetera, I would submit it was true. As a matter of fact, he sold the home seven months after the accident happened, and he didn't even have surgery until well after that. So I think that's why there wasn't a specific investigation done immediately. Are there any questions? Okay. Thank you, Mr. Nemethis. Thank you very much. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand and briefly assess for a panel change.